

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00116-CV
_____

IN THE INTEREST OF K.S., A CHILD

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2012-1065-DR

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Doug S.,[1] the father of K.S., appeals from an order terminating his parental rights to the child, raising two issues: (1) Doug argues that the evidence was insufficient to support the necessary finding that it was in the best interest of K.S. to terminate his parental rights, and (2) Doug maintains that he received ineffective assistance of counsel in contesting the termination proceeding. We find the contentions to be without merit and affirm the judgment of termination.

The record shows that K.S. was born in May 2012 and that within a month of that time, her mother (whose parental rights were likewise terminated in the same proceeding though she has not appealed) was incarcerated on drug-related charges. At the time of the child's birth, Doug was also incarcerated on charges relating to illicit drugs but was anticipating that he would be released on community supervision about ten months later. As a result, K.S. was taken into the custody of the Texas Department of Family and Protective Services (DFPS) and placed in foster care. Over the ensuing months, several hearings were conducted, and it became clear that there were family members of K.S.'s who were interested in adopting the child, with the apparent strongest contenders being an aunt and uncle residing in Mississippi. A permanency hearing was conducted March 13, 2013. The mother had been released from jail in November and thereafter could not be found. In the meantime, Doug completed his nine-month drug

---

[1]We use a pseudonym for the father's name in order to assist in protection of the identity of the minor. *See* TEX. R. APP. P. 9.8.

rehabilitation program at the D.E.A.R. unit[2] where he had been required to reside during his court-ordered drug rehabilitation program and was released March 12. Doug contacted DFPS representatives immediately to set up a plan. The problem confronting them was the short time frame remaining pursuant to the statute before the matter had to be resolved. *See* TEX. FAM. CODE ANN. § 263.401 (West 2008). A caseworker with the DFPS confirmed that the drug rehabilitation entity at which Doug had been required to reside as part of his drug treatment program had not permitted Doug to be involved with any of the service plan requirements. Based upon these circumstances, the trial court found that extraordinary circumstances existed and extended the final hearing on the case by 180 days. *See* TEX. FAM. CODE ANN. § 263.401(b).

At a subsequent hearing in May, it was determined that a potential placement family residing in White Oak had declined to be considered as a placement home for the child. It was then further discovered that although Doug had commenced with some of the services prescribed by the DFPS, he had then tested positive for present use of methamphetamines on two random drug screens during the six weeks that intervened between his release from the D.E.A.R. unit and the date of the hearing. The court thus ordered K.S. placed with a related couple in Mississippi (with Doug having some rights of visitation), and another hearing date was set.

A final permanency hearing was held July 10, 2013. At that time, Doug had tested positive for methamphetamine use and had been re-incarcerated. At that hearing, the court corrected some ambiguities in the timetable and corrected the dismissal date to comply with the

---

[2]A residential substance abuse recovery center located in White Oak, Texas.

3

statute (which would have been November 23, 2013, this being 180 days from the original dismissal date) and set a new trial date for October 16, 2013.

At the time of the October 16 trial, Doug was imprisoned, having been adjudicated guilty of possession of a controlled substance and sentenced to five years' imprisonment. A trial to the bench ensued. The court ultimately found that statutory grounds for termination existed, found that termination was in the best interest of the child, and adjudged the termination of the parent-child relationship.

Doug first contends that the evidence is insufficient to support the finding that termination was in the best interest of K.S.

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, that presumption can be overcome when presented with clear and convincing evidence to the contrary. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex. App.—Texarkana 2011, no pet.). In determining the best interests of the child, a number of factors have been considered, including (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id*. at 372. The analysis of evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.). Evidence supporting the termination of parental rights is also probative of best interest. *C.H.*, 89 S.W.3d at 28. A parent's inability to provide adequate care for a child, lack of parenting skills, and poor judgment may be considered when looking at the child's best interests. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). Parental drug abuse is obviously reflective of poor judgment and is also a factor to be considered in determining a child's best interests. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Also, evidence offered to prove grounds for termination, the amount of contact between the natural parent and child, the natural parent's ability to provide financial support, and the quality of care rendered by a child's caregiver are all relevant to determine if termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). It is unnecessary to prove all of these factors as a condition precedent to parental termination. *Id*. at 27; *In re N.L.D.*, 412 S.W.3d 810, 819 (Tex. App.—Texarkana 2013, no pet. h.).

In this case, the child (who was seventeen months old by the date of termination) had no real relationship with Doug, who had been incarcerated, imprisoned, or in residential drug rehabilitation facilities for all but about two months of the child's life. It is apparent that Doug suffered from a continuing drug addiction problem that was not even partially resolved by penal incarceration and intensive rehabilitation efforts. He failed to appear for scheduled counseling

5

sessions during his brief release from the rehabilitation facility and tested positive for the use of (and admitted to the use of) methamphetamine and marihuana on two occasions during his brief sojourn outside confinement. Through his own choices, he had no connection with the child and could have no real relationship possible until after his eventual release from prison. The choices Doug made demonstrate a lack of resolve to take action showing a potential for actually parenting the child, as opposed to simply saying that he wanted to do so. If one assumes that past is prologue, there is a great likelihood that his conduct would continue into the future. Actions speak louder than words.

In contrast, the family unit from Mississippi reflects the opposite. The couple own and operate a business (a restaurant) in a small town and had already raised two sons, one of whom was in college and the other employed. The DFPS worker who transported K.S. to Mississippi also testified that the couple and their children had good reputations in the community. The family (relatives of K.S.) wants to adopt the child.

The question in this case is whether the evidence adequately shows that termination of Doug's parental rights was in the best interest of K.S. Of the nine factors set out by *Holley*, only the first one does not substantively cut in favor of termination—at the child's tender age, its wishes are not available for consideration. All of the other factors support termination and the finding that termination was in the best interest of the child. Under this state of the evidence, we cannot conclude that the trial court's finding was made in error. The contention of error is overruled.

6

In the remaining issue, Doug argues that he received ineffective assistance of counsel in the termination proceeding. "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981). An indigent parent in a parental-rights termination case has the right to effective assistance of counsel, and the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), originally formulated in the criminal law context, has been adopted as the appropriate standard for evaluating ineffective assistance claims in termination cases. *In re J.O.A.*, 283 S.W.3d 336, 341–42 (Tex. 2009); *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003). To prevail on an ineffective assistance claim, an appellant must prove both *Strickland* prongs, establishing that counsel's performance was deficient and that counsel's errors prejudiced the appellant by depriving him of a fair trial with reliable results. *M.S.*, 115 S.W.3d at 545; *In re K.A.S.*, 399 S.W.3d 259, 264 (Tex. App.—San Antonio 2012, no pet.).

Doug contends that trial counsel was ineffective because he did not file a general denial for Doug until the date of the final hearing and because the record has no evidence of pretrial discovery efforts or any other pretrial motions. Doug also points out that he appeared telephonically at trial, but during the lunch break, although being told by his counsel to stay on the line, the connection was broken, and his trial counsel failed to request a continuance until the connection could be restored. Doug cites each of these as instances of ineffective assistance.

Although a motion for new trial was filed by appellate counsel, the only matters raised were contentions that the evidence was insufficient to support termination, and no hearing on that motion was conducted. Although the record contains no evidence that any written discovery

7

was propounded, there is likewise no evidence that such written discovery would have produced any fruits or that there was a necessity for it. Counsel was appointed nearly a year before the final hearing and appeared at numerous hearings to represent Doug before the final hearing was conducted. It is clear from the record of those hearings that counsel was familiar with all the individuals involved and had a strong understanding of the situation and the parties involved. Based upon this record, we cannot conclude that counsel was ineffective for failing to file formal discovery or other pretrial motions.

The absence of communications with Doug during the afternoon portion of the trial is more problematic. The State rested before lunch, and when they reconvened, Doug was no longer on the line despite being told to remain on the line. Not a great deal of the trial occurred after the termination of the telephone connection with Doug. Doug's grandmother (who unsuccessfully sought placement of K.S. with her) testified and said nothing either beneficial or detrimental to Doug's cause. Doug suggests that it was (1) error not to request a continuance and (2) harmful because he had no opportunity to present his position.

Although one could speculate that counsel might have been able to present testimony through Doug that would have been beneficial to his efforts to avoid termination, one could also speculate that an attorney who had previously visited with Doug (as had trial counsel) might have concluded that testimony by Doug (with his record concerning drug use) would be more damaging to his case than beneficial. In other words, there may have been some trial strategy on the part of trial counsel in not re-establishing the telephonic connection with Doug and having him testify. Since there was no testimony elicited from trial counsel at a motion for new trial or

8

otherwise, one cannot determine whether there was any trial strategy involved in his failure to reconnect with Doug and have him testify.

Doug does not argue that he had a right to appear at trial. Rather, he argues that error is shown because he would have testified; thus, he contends trial counsel's assistance was ineffective because he failed to reestablish a telephonic connection. However, there is nothing in this record to support that argument beyond speculation.

There is also nothing in the record to suggest that if Doug had been called to testify on his own behalf, any positive result would have been served. It is also not apparent from this record whether the connection was broken, or whether he decided to disconnect the telephone and return to his cell. Under this state of the record, we cannot conclude that error has been shown, and even if error were shown, there is no evidence of harm.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     January 21, 2014
Date Decided:      January 23, 2014

9