

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00063-CV

IN THE INTEREST OF
R.T.M. AND I.M., CHILDREN

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 79,495

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Raechel and Raymond (the mother and father, respectively, of R.T.M. and I.M.) appeal from the termination of their parental rights to the children, who were aged three and five years old. The issues they raise each deal with what they claim to be the insufficiency of the evidence to terminate the parent-child relationship with each of them and to justify the appointment of the Texas Department of Family and Protective Services (the Department) as conservator of the children as opposed to the appointment of a relative of the children in that capacity.

Termination of parental rights may be ordered if the petitioner proves the commission of an act or omission of a duty by the parent, as set out by statute, and also determines that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014).

The termination of parental rights under the Texas Family Code requires proof by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(1). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). When the legal sufficiency of evidence is challenged on appeal, it is the duty of the appellate court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. In an appeal, "we assume that the [fact-finder] resolved disputed facts in favor of its finding if a reasonable fact-finder could do so, but 'disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible.'" *In re K.W.*, 335 S.W.3d 767, 770 (Tex. App.—

2

Texarkana 2011, no pet.) (quoting *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "'If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.'" *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

Courts indulge a strong presumption that a child's interest is best served by remaining with the parents. That strong presumption is overcome, however, by clear and convincing evidence to the contrary. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.).

The following are the factors as set out in *In re K.S.*, 420 S.W.3d 852 (Tex. App.—Texarkana 2014, no pet.):

> In determining the best interests of the child, a number of factors have been considered, including (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 855 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)).

Cases have utilized these factors and others in their analyses, pointing out that each case is fact-specific; therefore, it is neither mandatory that a particular factor or combination of factors is required to be proven, nor is it mandatory to prove the existence of more than one factor. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The courts have also recognized specifically that the same evidence that supports termination due to acts or

3

omissions can also be considered for the purpose of determining the best interests of the child. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

Raechel and Raymond relocated to Texas from Michigan several years ago, bringing R.T.M. and I.M. with them. According to the testimony, Raechel had another child (a year older than R.T.M.) by another man, who is no longer in her care because the child had been injured by his father. She testified that the child's father (her then-boyfriend) inadvertently kicked the baby in the head while intending to kick her. Although she was offered parenting services and counseling by Michigan's child protective services agency, she failed to complete the duties prescribed to her; as a result of that failure, her rights to that child were terminated. When R.T.M. was born in Michigan, he was removed from her care because the child tested positive for marihuana and cocaine exposure at birth. On this occasion, Raechel completed the services prescribed by the Michigan child protective services agency, and R.T.M. was returned to her care after a year. She also testified that after R.T.M.'s return, she resumed the consumption of marihuana.

The circumstances were somewhat duplicated in Michigan on the birth of I.M. This child likewise tested positive at birth for the presence of marihuana and cocaine, prompting the Michigan authorities to remove both R.T.M. and I.M. from Raechel's home and place them with Raechel's cousin, A.H. Eighteen months later (about October 2011), Raechel regained possession of the children after having completed the prescribed services and a drug court program.

4

Although there was evidence that Raechel had admitted the regular use of both cocaine and marihuana from the time she was about twelve years of age (she was twenty-seven years old when the petition was filed) until three years before the trial in this matter, she denied use of cocaine while pregnant. There is testimony that Raymond admitted using marihuana every other day since he was a teenager.[1] Raymond was thirty-seven years old when the petition was filed.

Raechel and Raymond moved to Texas, and the Department became involved with them and these two children in June 2013. Raechel testified that she, a friend, and Raymond rode in a car with the children for the adults to get tattoos and that the adults had all been drinking and smoking marihuana, both before arriving at the location where the tattoos were to be applied and while at that location. During this episode, they became embroiled in an argument regarding the order in which the tattoos were administered to the three adults. The argument escalated to physical violence, and Raymond and Raechel exchanged blows in the car. Because of the altercation, Raymond stopped the car, and Raechel, R.T.M., and the friend exited it. Raymond then pulled away with I.M. still in the car. At that juncture, the Department was called; Raechel submitted to a drug test and tested positive for the presence of marihuana and amphetamine in her system.

Raymond was found by police shortly thereafter, asleep in the car, still in possession of I.M. He was charged with having committed domestic violence and for the possession of marihuana and was placed under arrest. He was also convicted of endangering I.M. as a result of these actions. Evidence also indicates that Raymond was incarcerated for a substantial amount

---

[1]As in Texas, the possession or use of any amount of marihuana is, under Michigan law, a misdemeanor. MICH. COMP. LAWS ANN. § 333.7403(1)(d) (West 2012).

5

of time after R.T.M. was born. Raechel refused to take court-ordered drug tests in February and May 2014. Raymond did not appear at trial.

The record shows that because of the actions taken by Raechel and Raymond, the children have only sporadically spent any time with either. R.T.M, a five-year old, had been removed three times and had spent nearly forty-one months in foster care, while the three-year old, I.M., had spent nearly thirty months of his life in foster care.

A therapist testified that neither child wants to visit Raechel, that they do not feel safe or secure with her, and that they have instead stated that they want to stay in the foster home. The therapist also testified that the boys are both afraid of Raymond and that they did not want to visit him. I.M. had described Raymond to the therapist as the "scariest or the meanest man you could ever meet." The therapist also testified that when she interviewed Raymond, he told her that the incident on the day of the visit to get the tattoos was "not that big a deal."

During the pendency of this case, the Department placed the children with T.C., a friend of Raechel, with conditions whereby Raechel was supposed to be prevented from going to T.C.'s home. Despite those constraints, Raechel visited there anyway and (to compound her myriad problems) was arrested and convicted for making a terroristic threat against T.C.'s neighbor.

In sum, there is evidence (1) that the children wanted to stay with their foster parents (who wish to adopt the children), (2) that there had been consistently continuing bad behavior by Raymond and Raechel of a nature that both emotionally and physically endangered the children, (3) that Raymond and Raechel had declined to take action to alter their behavioral patterns, and (4) that the home environment of Raechel and Raymond (even for the short time the children

6

were with them) provided the children with neither emotional nor physical stability. There is also evidence that the foster parents have aided the children significantly both in their emotional and rational growth and that they have bonded strongly with the foster parents.

Under the facts presented, we determine that there was clear and convincing evidence presented to support the trial court's finding that Raechel and Raymond both committed acts set out in the Texas Family Code as being grounds for the termination of the parent-child relationship and that termination of their parent-child relationship with the children the subject of this suit was in the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001.[2]

Raechel and Raymond also bring a point of error contending that the evidence was insufficient to allow the court to appoint the Department as managing conservator instead of appointing A.H. As stated previously, A.H. is a relative of Raechel and is a person who intervened in this action; A.H., who currently resides in Casper, Wyoming, provided care for the children when they were removed from Raechel and Raymond in Michigan. A.H. and her extended family all moved to Wyoming from Flint, Michigan, to obtain employment. A.H. was questioned extensively, and her testimony reflects a solid home life, no prior arrests or convictions of any sort, a strong family network in and around Casper, and positive and appropriate child-rearing skills with her own children.

---

[2]In its order (based upon the findings of a jury), Raechel was found to have allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being, and had failed to comply with the provisions of a court order as described in Section 161.001(1)(O) of the Texas Family Code to be grounds for termination. For his part, Raymond was found to have been guilty of the same conduct toward the children as Raechel, but had also been previously convicted or has been placed on community supervision (including under deferred adjudication), for being criminally responsible for the death or serious injury of a child under circumstances that would violate Section 22.041 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.041 (West 2011).

However, there is also evidence that the home study conducted by the appropriate agency in the State of Wyoming concluded that A.H.'s home was too small to handle two additional children—but also that she had obtained a larger dwelling since that time. There was also a note that A.H.'s husband smoked tobacco, a situation that the person conducting the study found to be problematic because one of the children suffers from asthma. A.H.'s response to that complaint was that the husband had begun using e-cigarettes and that he was now smoking outside the house. The State also articulated concerns based on her previous actions allowing the mother to visit the children in Michigan more often than was allowed by the terms of the conditions as set by Michigan's child protection agency.

There was also evidence that A.H. had not seen the children in about two years (but that she had visited with them electronically, using Skype, during that time) and that she had not traveled to Texas to visit them until this trial. The State argues that virtual presence is insufficient to provide true familiarity, thus, the children did not really know her, and also that it would be deleterious to the children to be moved from one place to another again.

The State argues that we should not address or consider this matter on its merits because to do so would effectively allow Raechel to complain of errors that do not injure her or which merely affect others. A.H. filed no appeal from the judgment. In support of its position, the State directs us to cases holding that "appealing parties may not complain of errors that do not injuriously affect them or that merely affect the rights of others." *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999) (per curiam); *see Matbon, Inc. v Gries*, 287 S.W.3d 739, 740 (Tex. App.—Eastland 2009, no pet.). As pointed out by the State, that

concept has also been applied in parental-rights termination cases, although not in this particular type of situation. *In re G.F.*, No. 09-11-00316-CV, 2012 WL 112549 (Tex. App.—Beaumont Jan 12, 2012, no pet.) (mem. op.) (appealing mother attempts to raise issue of allegedly ineffective ad litem counsel's representation of children); *In re T.N. & M.N.*, 142 S.W.3d 522 (Tex. App.—Fort Worth 2004, no pet.) (same). That rule has been held not to apply where the rights of the "appealing and nonappealing parties 'are so interwoven and dependent on each other as to require a reversal of the entire judgment.'" *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 236–37 (Tex. 2008) (quoting *Ex parte Elliot*, 815 S.W.2d 251, 251 (Tex. 1993) (per curiam)); *see Swinney v. Mosher*, 830 S.W.2d 187, 197 (Tex. App.—Fort Worth 1992, writ denied).[3]

Raechel's and Raymond's appeals complain because their parental rights to the children were terminated. A.H. necessarily would complain because the court chose not to place the children with her. Although those matters share facts, the legal impact of the rulings on the different categories of individuals are not related. This is a situation where the alleged error would not "injuriously affect" the parents, but would affect only the intervenor. In such a situation, the appellants do not have the standing to bring this issue, and we may not address it.

---

[3]The case has been cited for this proposition only once, ironically, by the Supreme Court of Wyoming. *Welch v. Hat Six Homes*, 47 P.3d 199, 204 (Wyo. 2002).

We affirm the judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 13, 2014
Date Decided:       December 4, 2014