

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00078-CV

_____

IN THE INTEREST OF R.L.C., JR., R.D.C., K.M.S., AND A.M.C., CHILDREN

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2013-983-DR

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Amy Smith has had an extensive history with drug use and the criminal justice system. In and out of drug rehabilitation treatment centers since 2004, Smith tested positive for marihuana use five times in 2013. In early 2014, Smith tested positive for marihuana, amphetamine, and methamphetamine. Diagnosed with a substance abuse disorder, Smith admitted at the final hearing held in late August 2014 that she had used methamphetamine within a week before, and marihuana within twenty-four hours before, the hearing. Smith testified, "I'm not a good mother today," and "I don't know who I am. This ain't me." The trial court terminated Smith's parental rights to her four children,[1] ranging in ages from seven to eleven years old. On appeal, Smith does not challenge the findings on any of the predicate grounds for termination,[2] but argues just that there was factually insufficient evidence to show that termination was in the best interests of the children. We disagree with Smith and affirm the trial court's judgment.

To terminate an individual's parental rights to her child, the Texas Department of Family and Protective Services (Department) must prove, and the trial court must find, by clear and convincing evidence, both of the following statutory requirements: (1) that the parent has

---

[1]The four children are eleven-year-old Richard, ten-year-old Ralph, nine-year-old Karley, and seven-year-old Alex. To protect the confidentiality of the children, this Court will refer to all involved parties by fictitious names. *See* TEX. R. APP. P. 9.8(b)(C)(2).

[2]After a bench trial, the trial court found that Smith (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being, (3) failed to comply with a court order establishing the actions necessary for her to obtain the return of the children, and (4) used a controlled substance in a manner that endangered the children's health or safety and (a) failed to complete a court-ordered substance abuse treatment program; or (b) continued to abuse a controlled substance after completing a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O), (P) (West 2014).

2

engaged in one of the statutory grounds for termination; and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). The clear-and-convincing burden of proof has been defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *C.H.*, 89 S.W.3d at 23. Due process demands this heightened standard. *E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

The standard of review for factual sufficiency of the evidence in termination cases is well established. *J.F.C.*, 96 S.W.3d at 266 (citing *C.H.*, 89 S.W.3d at 25). In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable fact-finder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a fact-finder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.* In a termination case, the Department seeks to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. *See* TEX. FAM. CODE ANN. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Thus, we strictly scrutinize termination proceedings in favor of the parent. *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (citing *Holick*, 685 S.W.2d at 20).

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome the presumption. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). In deciding whether termination would be in the best interest of the child, the trial court may consider this nonexclusive list of factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *K.S.*, 420 S.W.3d at 855. It is unnecessary to prove all of these factors as a condition precedent to parental-rights termination. *C.H.*, 89 S.W.3d at 27.

"[W]hen the evidence shows that the parental relationship endangered the child's physical or emotional well-being, evidence of the parental misconduct leading to the removal and subsequent termination should be considered when reviewing the best interest of the child." *In re C.C.*, No. 13-07-00541-CV, 2009 WL 866822, at *10 (Tex. App.—Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.). Thus, in our consideration of the best interests of the children, we examine some of the evidence that was presented to establish the statutory grounds for termination.

4

As mentioned before, Smith had a history with drugs and the criminal justice system. In 2006, Longview police officers were dispatched to Smith's home and found her asleep and under the influence of drugs with the children in the house, otherwise unsupervised. Officers also found marihuana scrapings, razor blades, and a rifle on a table in the living room, a "scale of white residue believed to be cocaine, and pornographic tapes in the home." In 2007, Smith was found guilty of endangering a child and was placed on community supervision for a period of five years. After violating the conditions of her community supervision in 2008 by smoking marihuana, Smith had her community supervision modified with additional terms and conditions. Smith again violated a condition of her community supervision and, in 2010, was sentenced to sixteen months' confinement in state jail for endangering a child. In 2011, Smith was convicted of theft of stolen property and was sentenced to ninety days' confinement in the Gregg County jail. In 2013, Smith was convicted of possession of a dangerous drug and was assessed a $300.00 fine. On July 1, 2013, while this case was pending, police found Smith and her ex-boyfriend, Curtis Howard, in a motel room with marihuana. On August 3, 2013, Smith pled guilty to and was convicted of possession of marihuana and was sentenced to sixty days' confinement in the Gregg County jail.

Smith also had a history with the Child Protective Services Division of the Department (CPS). Ashley Moore, a CPS employee, testified that Smith had been investigated three times before and that the children had twice been removed from Smith's care as a result of her drug abuse and neglectful supervision, though they were later returned. Moore's involvement in Smith's fourth CPS investigation began after she received reports that Smith was still using

5

marihuana, that Smith was being physically abused by Howard, and that there were bruises on the children. Moore's investigation confirmed the reports. Moore also discovered (1) that Smith would beat her children and (2) that Smith would leave her children with others—sometimes for long periods of time—and would give them permission to "whip" them.

The evidence presented at the final hearing was that Smith was not capable of remaining drug-free. Stephanie Whitten, a Department caseworker, testified that Smith refused several drug tests and had not completed any of the services in her family service plan, including drug abuse counseling and treatment. In 2013, Smith tested positive for marihuana on February 4, March 2, June 27, August 15, and November 4. On February 18, 2014, Smith testified positive for marihuana, amphetamine, and methamphetamine. Connie Caldwell, a licensed chemical dependency counselor and clinical director for the East Texas Counsel of Alcoholism and Drug Abuse testified that Smith had been diagnosed with a substance abuse disorder. Although Smith was referred to a residential treatment center in July 2013, the Department had no information that she had successfully completed the in-patient treatment program. At the final hearing, Smith admitted to having used methamphetamine that week and having smoked marihuana within the past twenty-four hours.

Smith also testified that Howard was still harassing her. Kimberly Sheffield, Smith's friend, characterized Howard as "a big bully" drug dealer who hurt and scared Smith. Smith described Howard as "just crazy," and testified that he had physically abused her in the past. Smith admitted that Howard had been living with her and the children and that he had "whipped them before" with her permission. Moore testified that one of the children's caregivers had

6

shown her a video recording of Smith swinging a belt while cursing angrily at Richard. According to Sheffield, Smith was aware that the children's other babysitters would beat them with a belt. The jury was shown photographs of bruises on Karley and Alex after they had sustained beatings with a belt by one of Smith's friends.

Smith testified, "I'm not a good mother today," and told the court that she understood why the Department would not want to return the children to her. She added, "I don't know who I am. This ain't me."

As to the first *Holley* factor, Richard and Alex had expressed a desire to return to Smith. However, according to Whitten, Karley did not want to be returned to Smith and wished to be adopted instead. Ralph had not made his desires known by the time of the final hearing. The first *Holley* factor (1) weighs against termination with respect to Richard and Alex, (2) weighs in favor of termination with respect to Karley, and (3) is neutral with respect to Ralph.[3]

Due to the children's ages, their current and future emotional and physical needs are great, and the evidence in this case demonstrated that Smith had no income, no transportation, and no suitable home, and would not likely be able to meet the children's needs. Richard suffered from post-traumatic stress disorder as a result of his upbringing, was depressed, and had attention deficit hyperactivity disorder. As a result of aggressive behavior displayed by Richard and Ralph, both were placed in Azelway Boy's Ranch in Tyler, Texas, where they could receive appropriate counseling and psychiatric treatment. Whitten testified that the children needed a

---

[3]"Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, . . . [it] cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life." *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.).

structured, stable environment which Smith could not provide and that it was in their best interest to be adopted. Although she desperately loved her children and visited them while they were in the Department's care, Smith admitted that she was still using drugs, that she was still being harassed by Howard, that the children suffered emotionally under her care, and that she was not prepared for their return. "A parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *In re J.T.G.*, No. 14-10-00972-CV, 2012 WL 171012, at \*17 (Tex. App.—Houston [14th Dist.] Jan. 9, 2012, pet. denied) (mem. op.). The second and third *Holley* factors weigh in favor of termination.

Next, Smith's continued drug use demonstrates an inability to provide a stable environment sufficient to support her children's emotional and physical needs. *See In re F.A.R.*, No. 11-04-00014-CV, 2005 WL 181719, at \*4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.). Russell Bailiff, a licensed clinical social worker supervisor, testified that Smith's drug addiction and life circumstances compromised her ability to parent. According to Bailiff, even Richard said that Smith "can't get it together." Smith admitted that she was not a good mother and that the children's return to her could emotionally harm them. The fourth *Holley* factor weighs in favor of termination.

Smith failed to take advantage of programs that could help her. Krystal Fetting, a licensed chemical dependency counselor, testified that Smith attended only seven out of twelve outpatient substance abuse treatment sessions. Fetting assisted Smith with filling out an application with Restoring Joy Ministries so that Smith could "have a roof over her head," but Smith never appeared for the interview. Smith testified that she had set up an online job search

8

profile with the Texas Workforce Commission, but that she never followed up with them on her job search. The fifth *Holley* factor weighs in favor of termination.

Although she testified that she had a few options, Smith, who was currently homeless, had no set plans as to where she might reside with the children. Meanwhile, Richard and Ralph were doing well at Azelway Boy's Ranch, and even Smith testified that she had seen a big improvement in their demeanor. Karley and Alex were also thriving in their foster home. Their foster mother, Kelly Jordan, testified that when they arrived, Karley had lice, Alex did not know how to dress himself, and both children were very dirty, unkempt, did not know how to take a bath or dry off with a towel, and had poor dental hygiene. According to Jordan, the children were learning about hygiene, were getting used to a structured routine, and were becoming involved in extracurricular activities. Even Smith admitted that the placement with Jordan was currently providing Karley with a better life. Because Jordan was not able to adopt Karley and Alex, the Department's plan was to seek a stable home for all four children. The sixth and seventh *Holley* factors weigh in favor of termination.

Next, "[e]vidence of past misconduct or neglect can be used to measure a parent's future conduct." *In re I.R.K.-N.*, No. 10-13-00455-CV, 2014 WL 2069281, at *7 (Tex. App.—Waco May 15, 2004, pet. filed) (mem. op.) (citing *Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue.")). Smith's history of drug abuse, record of incarceration, failure to protect the children from physical abuse, victimization by Howard, and lack of income or suitable home all demonstrated that the exiting parent-child relationship was not a proper one.

9

According to Bailiff, Richard and Ralph stated (1) that "there was a lot of partying and a lot of people around that they didn't feel safe around," (2) that their mother acted "funny" when under the influence of drugs, and (3) that they wanted to have a different life. The eighth and ninth *Holley* factors weigh in favor of termination.

Considering the *Holley* factors, and in light of all of the evidence, the fact-finder could have reasonably formed a firm belief or conviction that termination of Smith's parental rights was in the best interests of Richard, Ralph, Karley, and Alex. The evidence was factually sufficient to support the best interest finding.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     December 17, 2014
Date Decided:       February 12, 2015