**Opinion filed July 11, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00012-CV

_____

## IN THE INTEREST OF D.K.H., A CHILD

**On Appeal from the 1st Multicounty Court at Law**
**Nolan County, Texas**
**Trial Court Cause No. CC-8400**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and the alleged father of D.K.H.[1] Only the mother has appealed. On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination is in the child's best interest. We affirm the trial court's order of termination.

### I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate

---

[1]We use pseudonyms to protect the identities of children. TEX. R. APP. P. 9.8(b)(2).

one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed D.K.H. to remain in conditions or surroundings which endangered the physical or emotional well-being of D.K.H.; (2) engaged in conduct or knowingly placed D.K.H. with persons who engaged in conduct which endangered the physical or emotional well-being of D.K.H.; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of D.K.H. who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of D.K.H.'s removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the child. *See id.* § 161.001(b)(1)(D), (E), (O). Appellant does not challenge these findings.

The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). It is this finding that Appellant challenges on appeal. Specifically, Appellant contends that the trial court's finding that termination is in D.K.H.'s best interest is not supported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding

2

was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional

3

and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child

4

may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

D.K.H. was born on June 20, 2022, after only thirty-two weeks' gestation, and tested positive for methamphetamines and opiates at birth. Appellant also tested positive for methamphetamines prior to D.K.H.'s delivery. After D.K.H. was born, she spent four weeks in the neonatal intensive care unit to monitor and treat her enlarged brain ventricles and other symptoms of prematurity. D.K.H. has required continuing intensive, frequent care to address her developmental delays and medical issues.

The Department removed D.K.H. from Appellant's care in July of 2022, and began its reunification efforts by creating a Family Plan of Service. The trial court ordered Appellant to comply with each requirement set forth in the service plan during the pendency of the suit. Appellant's service plan, among other things, required that she: (1) participate in counseling, a substance abuse assessment, and a parenting class; (2) provide proof of sufficient income and stable housing; (3) submit to random drug testing; and (4) attend scheduled visits with D.K.H. At the outset, Appellant showed hostility toward the Department and 2INgage staff, and refused to permit her case manager to have access to her home.

Appellant did not appear for the final hearing. Her 2INgage permanency case manager, LaKeshia White, testified that Appellant has partially complied with her

service plan, but has "been the least compliant with drug testing." Appellant consistently drug tested until February of 2023, but the results were frequently positive for methamphetamine, amphetamine, cocaine, and marihuana. Then, between February and August of 2023, Appellant refused to submit to drug testing as required.

In July of 2023, the trial court suspended Appellant's visitation with D.K.H. due to her positive drug tests and her missing scheduled visitations with D.K.H. Appellant was ordered to complete "a new evaluation for substance abuse" and submit "two clean UAs" before visitation would resume. Appellant only submitted one urine sample, and the results of her hair follicle sample were positive for amphetamine, methamphetamine, and cocaine.

D.K.H.'s foster mother, physical therapist, and early intervention specialist described D.K.H.'s developmental delays and progression. D.K.H. was seventeen months old at the time of the final hearing but was only developmentally on target for a ten-month-old. D.K.H.'s foster mother, advised the trial court that D.K.H. did not move, interact, make eye contact, walk, or eat food when she first came into her care in March of 2023. With physical therapy, D.K.H. has begun to "mobilize on her own" and utilize "pre-walking skills." Her speech has improved, she can now verbalize her needs, and she is "healthy and growing." In addition to D.K.H.'s physical therapy and regular medical wellness checks, the foster mother takes her to a neurosurgeon every six months for an MRI.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the child. This appeal followed.

### III. *The Best Interest of the Child Determination*

In Appellant's sole issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of D.K.H.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of D.K.H. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the child is returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.— Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children"). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Thus, the trial court could properly consider Appellant's failure to comply with the conditions of her family service plan, drug use, and other evidence of endangerment in determining whether the termination of her parental rights was in D.K.H.'s best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The trial court could also properly consider that D.K.H., who was born eight weeks premature, tested positive for methamphetamine at birth. The record shows that Appellant tested positive for methamphetamines before D.K.H.'s delivery, and that her methamphetamine use during pregnancy had "a clear association with . . . premature delivery." The trial court could have reasonably concluded that Appellant considered the risks of using drugs during pregnancy and ignored them. Specifically, Appellant exposed D.K.H. to cognitive impairment or delays in her development, such as the "inability to speak and interact," difficulty "learning to read," and the child's failure to reach her full long-term potential.

D.K.H. was in fact adversely affected by Appellant's flagrant disregard for her life and well-being while in utero. She spent her first four weeks in intensive

8

care on respiratory support and had "brain malformation." She has also endured lasting physical effects. When the foster mother began caring for nine-month-old D.K.H., she "wasn't interactive, no smiling or laughing," "no rolling, no nothing." She "wasn't able to move herself." Appellant's conduct directly endangered D.K.H., which supports the trial court's best-interest finding.

Given the child-centered focus of the best-interest inquiry, we consider D.K.H.'s improvement in light of her frequent and intensive care since removal. *See J.W.*, 645 S.W.3d at 746–47; *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). D.K.H.'s physical and emotional needs are being met with the foster mother, as she is regularly seen and treated by a team of medical specialists to ensure her continued developmental improvement and medical well-being. The foster family "love[s] [D.K.H.] dearly," and hopes to adopt her. Although D.K.H. is too young to express her desires, the trial court could consider that she has bonded with the foster family, is well cared for by them, and has spent minimal time with Appellant. *See In re A.R.D.*, No. 14-24-00010-CV, 2024 WL 1662392, at *8 (Tex. App.—Houston [14th Dist.] Apr. 18, 2024, pet. denied).

Appellant, by contrast, has exhibited significant parental indifference. She refused to permit a home visit, continued testing positive for methamphetamine, cocaine, and marihuana, and did not attend scheduled visitations with D.K.H. *See E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child."). In addition to her positive drug tests, Appellant refused to submit to testing for approximately four months leading up to the final hearing. Appellant's "decision to engage in illegal drug use during the pendency of a termination suit," when she

9

was at risk of losing D.K.H., supports a finding that she engaged in conduct that endangered D.K.H.'s physical or emotional well-being. *See J.S.*, 687 S.W.3d at 551 (quoting *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st District] 2016, pet. denied)). Further, her persistent and unapologetic drug use while under the Department's supervision likewise shows her apparent disinterest in placing the welfare of D.K.H. before her own. *See, e.g., S.O.*, 2023 WL 2237084, at *12–13 ("Mother's drug use was not isolated but had been an ongoing problem in her life."); *see also N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights."). As such, Appellant's continued drug use and failure to comply with the requirements of her service plan supports the trial court's best-interest finding.

Finally, Appellant last visited D.K.H. in May of 2023 and missed her scheduled visitations in June; her visitation was suspended thereafter. "It is unusual for a parent to see his or her young child so infrequently," and Appellant has offered no excuse for having seen D.K.H. "a mere handful of times" since her birth. *See In re A.J.D.-J.*, 667 S.W.3d 813, 824 (Tex. App.—Houston [1st Dist.] 2023, no pet.). Such evidence of little or no contact with D.K.H. supports the trial court's best-interest finding. *See id.*

In sum, we have considered Appellant's "inability to provide adequate care for her child, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment . . . when looking at the child's best interest." *See A.R.D.*, 2024 WL 1662392, at *8 (quoting *J.D.*, 436 S.W.3d at 119). Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to D.K.H. now and in the future, the emotional and physical needs of D.K.H. now and in the future, Appellant's parental abilities, and her ongoing drug abuse, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of D.K.H. *See*

*Holley*, 544 S.W.2d at 371–72; *J.W.*, 645 S.W.3d at 741.  Accordingly, we overrule Appellant's sole issue.

## IV.  *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


July 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.