**Opinion filed September 19, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00076-CV

_____

# IN THE INTEREST OF C.H. AND L.H., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10989-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of C.H. and L.H.[1]  Only the father, Appellant, has appealed.  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination is in the children's best interest.  We affirm the trial court's order of termination.

### Termination Findings and Standards

The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023).  To terminate

---

[1]We use initials to refer to the children and their family members.  *See* TEX. R. APP. P. 9.8(b).

one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the children. *See id.* § 161.001(b)(1)(D), (E), (O).

The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2). On appeal, Appellant challenges the trial court's best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most

favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021))). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals

to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v.*

*May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). The factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

In 2017, Appellant's and the mother's first child, C.H., was removed at birth due to their methamphetamine and heroin use during pregnancy. C.H. spent eighteen months in the Department's care while Appellant and the mother engaged in services. Soon after C.H.'s monitored return, the mother gave birth to their second son, L.H., in 2019.

In February of 2023, when C.H. was five and L.H. was three years old, the Department Investigator Karlye Kramer contacted the parents regarding allegations of "[p]hysical neglect." The parents initially denied drug use, and did not submit to drug testing. Kramer subsequently learned that the parents relinquished custody of the children to C.H.'s former foster parents. Appellant and the mother had been using methamphetamine, and wanted to "get clean on their own" without the Department's involvement.

The Department sought and was granted temporary managing conservatorship of C.H. and L.H. on February 23, 2023. In March 2023, Appellant's court-ordered drug test results were positive for methamphetamine and amphetamine.

At the final hearing on February 22, 2024, the Department presented the testimony of Kramer, Laura Guerrero, the permanency case manager for the Department, and the foster mother. Appellant and the mother also testified. The Department created a Family Plan of Service for Appellant, which the trial court

5

amended and made an order of the court. As part of Appellant's family service plan, he was ordered to:

- maintaining safe, stable, and appropriate housing free from drugs and other illegal substances;

- participate in a psychological evaluation and substance abuse assessment;

- attend parenting classes;

- submit to random drug and alcohol testing by urinalysis, hair follicle, or oral swab when requested, and "demonstrate sobriety" by testing negative;

- attend and complete inpatient rehabilitation if he tests positive after May 16, 2023, the date of the status hearing;

- attend all scheduled visitation with his children;

- participate in individual counseling;

Appellant failed to complete his virtual parenting classes, citing "Wifi issues" and "work problems" for his inability to log onto Zoom. He did not attend his counseling sessions, and Guerrero had difficulty maintaining contact with him throughout the pendency of the case.

Guerrero further testified that C.H. described being "scared" upon seeing Appellant have "an allergic reaction." He saw "his dad give himself a shot," then "he leaned back and began shaking." Appellant denied using drugs around his children, and explained that C.H. saw him having an epileptic seizure. According to Appellant, C.H. "doesn't even know what a shot is," and Appellant doesn't "shoot drugs," he "snort[s]" them.

In June 2023, Appellant tested positive for methamphetamine, and was ordered to complete inpatient treatment. He began an inpatient rehabilitation program at the end of August, but left shortly thereafter, and did not contact Guerrero because he "didn't know [he] needed to." Guerrero learned that Appellant was not engaged in services when she coincidentally saw him "driving around" in September.

Appellant did not submit to drug testing in August, September, and October after he left the facility. In November 2023, he successfully completed a thirty-day inpatient treatment program, and tested negative through the end of the year. However, he refused to submit to drug testing in January and February of 2024.

Appellant's weekly two-hour visits with his children were suspended in November until he submitted "to hair follicle and urinalysis drug testing." Appellant tested negative, then regularly attended his parent-child visits. Following the visits, both C.H. and L.H. would "throw tantrums," and had "been off and on" wetting the bed. The bed-wetting "completely stopped" during the two-month break in visitation, but the children regressed when visits resumed.

The children have been living with the foster parents since March 2023, and are "doing great." The foster mother told the trial court that when C.H. and L.H. first came into their care, they "were severely delayed in their development," and "were throwing up a lot." L.H. "had a significant speech delay," and was "almost non verbal"—he "couldn't say words," just "noises and sounds." Both children are in counseling, and L.H. is receiving speech therapy. L.H.'s speech has dramatically improved, and he is able to express himself and communicate. Although the foster parents do not plan to adopt the children, they will care for them until the Department finds a long-term placement.

Appellant and the mother have been living "[o]n and off" with Appellant's father and sister in a trailer home since October 2023. Guerrero opined that "it would be very cramped if you put two more children in there." She was also concerned with Appellant's sister's drug history, which led to criminal convictions and her children's removal years prior.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the children. This appeal followed.

7

*The Best Interest of the Children Determination*

In Appellant's sole issue, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the children.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). "Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, 'particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety.'" *S.O.*, 2023 WL 2237084, at *11 (quoting *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.)). "[E]vidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *Id.* (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the children's best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellant's failure to comply with the conditions of his family plan of service, his drug use, and other evidence of endangerment in determining whether the termination of his parental rights was in the children's best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

On appeal, Appellant argues that his "failure to complete certain parts of a court-ordered service plan does not show potential physical danger to the children." He likewise contends that his drug use was not a "contributing factor to the speech delays" and the children's "development issues."

Terminating the parent-child relationship does not require a direct causal link between a parent's drug use and harm to the children. *R.R.A.*, 687 S.W.3d 269, 276–78 (Tex. 2024) ("[A] pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm."). Rather, a reviewing court evaluates, based on all the "evidence that a factfinder could reasonably credit," whether a parent's "illegal drug use present[ed] a risk to the parent's 'ability to parent.'" *Id*. at 278. Additionally, the trial court could consider in its best interest determination, among other factors, Appellant's lack of compliance with his family service plan, and that his past endangering conduct may recur if the children were returned to him. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug use, or lack of care for the children").

The record shows that Appellant and the mother have used heroin and methamphetamine for nearly two decades. Appellant achieved reunification after C.H. was removed in 2017, and claimed to remain sober for the next "five to six" years. Appellant and the mother "relapsed with methamphetamine" prior to the Department's second intervention. They were without stable employment, and lived in a hotel room with the children. The trial court could properly consider Appellant's continuing pattern of illegal drug use, as well as his failure to submit to drug testing throughout the pendency of the case. *See T.D. v. Texas Dep't of Fam. & Protective Servs.*, 683 S.W.3d 901, 914 (Tex. App.—Austin 2024, no pet.) ("The factfinder may infer from a parent's missing Department-requested illegal-drug tests during a parental-rights-termination suit that the tests missed would have come up positive."); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[A] fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs.").

Moreover, when the children came into foster care, three-year-old L.H. was not potty-trained, his speech delay was so significant that he "couldn't say words," and both children were "behind in school." *See T.D.*, 683 S.W.3d at 914 (considering the parents' "fail[ure] to have their children educated" as endangering conduct). And contradictory to Appellant's denial of drug use around his children, C.H. witnessed Appellant have an "allergic reaction" after giving "himself a shot," permitting the rational inference that he used drugs in front of C.H. Appellant's "lack of housing and ability to support his children exemplify risks that a pattern of drug use can create." *R.R.A.*, 687 S.W.3d at 279. Considering that those risks and his children's developmental delays had "a close temporal relationship with [Appellant's] drug use," the trial court could rationally infer that Appellant's illegal drug use had a detrimental effect on his ability to parent. *See id.* at 278–79.

At the final hearing, neither parent demonstrated the ability to secure stable housing aside from the remote desire to "[g]et [their] own place." Appellant had begun working for a "flooring tile company" the month prior, and the mother was still unemployed. *See* FAM. § 263.307(a) (West 2019) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). Consequently, the trial court could consider Appellant's impermanent and uncertain living situation in determining the best interests of the children. *J.D.*, 436 S.W.3d at 119 ("A parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest.").

Despite the Department's efforts to reunify Appellant with his children, he failed to maintain consistent contact with his case manager and complete his required services, including parenting classes, counseling, and submitting to drug tests. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding); *E.C.R.*, 638 S.W.3d at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."). Appellant blamed "ride issues and phone issues" for missing his required drug tests in January and February, but never solicited Guerrero's help with transportation. While Appellant attributed his absences from virtual parenting class to "Wifi issues" and "work problems," the mother proffered the vague excuse that "things would come up." Appellant delineated the Department's persistence and patience in explaining why he only went to one counseling session:

> Again, I had the ride and the phone thing. We started it. And I guess we didn't have no time to finish. We were just getting into it. It took a while. We got referred. We didn't go. We got referred. Had to take two more times of referrals, I believe.

11

The trial court also heard that Appellant believed that counseling was not important for his sobriety. The trial court, as the factfinder, was permitted to determine, based on the testimony, that Appellant was not excused for his acts and omissions. *See In re A.J.D.-J.*, 667 S.W.3d 813, 837 (Tex. App.—Houston [1st District] 2023, no pet.) (A parent's "failure to provide valid excuses for her behavior weighs in favor of the trial court's finding that termination of her parental rights is in the child's best interest.").

Most importantly, the children are improving and "doing great" in their current placement. Although "[e]vidence about placement plans and adoption are, of course, relevant to best interest," a "lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *C.H.*, 89 S.W.3d at 28. Otherwise, terminations would regularly be subject to reversal on the sole ground that "an adoptive family has yet to be located." *Id.*; *see also In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The foster parents are committed to providing the children with an environment and structure where they can succeed, and will do so until they find a permanent home. Appellant, on the other hand, has not provided his children with a safe, drug-free home environment. Therefore, we conclude that the trial court properly found that this factor does not weigh against a best-interest finding and termination of Appellant's parental rights. *See C.H.*, 89 S.W.2d at 28; *F.M.E.A.F.*, 572 S.W.3d at 732.

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's parental abilities, and his history of drug use, it is clear that Appellant exhibited "a pattern of conduct that is inimical to the very idea of child-rearing," which indicated that the existing parent-child relationship is not a proper one. *J.F.-G.*, 627 S.W.3d

at 316 (quoting *C.H.*, 89 S.W.3d at 28); *Holley*, 544 S.W.2d at 371–72.  We hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.  Accordingly, we overrule Appellant's sole issue.

## VI.  *This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


September 19, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.