**Opinion filed February 13, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00236-CV
_____

## IN THE INTEREST OF K.G. JR., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11157-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of K.G. Jr.[1]  Only the mother has appealed.  In a single issue, Appellant contends that the evidence is legally and factually insufficient to support the trial court's finding that terminating her parental rights is in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2024).

---

[1]We use initials to refer to the child.  *See* TEX. R. APP. P. 9.8(b).

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the child, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal under Chapter 262 for abuse or neglect. *See id.* § 161.001(b)(1)(D), (E), (O). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required

2

appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of

3

the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the

future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*The Evidence Presented at Trial*

Prior to K.G. Jr.'s birth, Appellant and K.G. Jr.'s father, who was abusive to Appellant, were in a relationship for three or four years, used methamphetamine together, and were "stay[ing] on the streets." Appellant and the father were still living a transient lifestyle when K.G. Jr. was born on October 18, 2021. When K.G. Jr. was a month or two old, Appellant decided that she "didn't want to be around him . . . while [she] was on drugs," so she "left him with [the father]," who was living in his car. Appellant claimed that she thought the father had stopped using drugs, stating, "since he had his son with him, I thought he was going to get his stuff together, but he didn't . . . he started using, I guess." According to Appellant, the father had K.G. Jr. for the next two years until K.G. Jr. was removed. Appellant had intermittent contact with K.G. Jr., including the day before his removal, but Appellant denied using methamphetamine around the child. However, on August 8, 2023, the day after Appellant spent time with K.G. Jr., Appellant was admitted to the hospital for a methamphetamine overdose. The Department opened its investigation the same day.

After driving "around town all day searching for them," Kianna Alexander, an investigator with the Department, found the father and K.G. Jr. living in an abandoned shed. Alexander observed "trash everywhere" and "knives on the

ground," and law enforcement found a "[c]ouple of needles" and "[g]lass." K.G. Jr. was covered in dirt, had a "very full" diaper, and was not wearing clothes or shoes while "running around freely in an unsafe environment." The father told Alexander that when he saw Appellant the day before, she was under the influence and returned K.G. Jr. to him because she "was using drugs." The father also admitted to recent methamphetamine and marihuana use.

The Department took possession of K.G. Jr. and filed a petition seeking temporary managing conservatorship the following day, August 9, 2023. *See* FAM. § 262.104–.105 (authorizing the Department to take possession of a child without a court order in an emergency and requiring the Department to, among other things, file its petition "without unnecessary delay"). A hair sample was collected from K.G. Jr. on August 15 for drug testing, which yielded positive results for methamphetamine. On October 5, 2023, the trial court approved Appellant's family plan of service and made it an order of the court. Appellant's service plan included the requirements that she attend scheduled parent-child visits, submit to drug testing when requested and test negative for all substances, notify the Department of any changes in address or phone number within seventy-two hours of the change, and obtain legal employment and safe housing.

In January 2021, Appellant pled guilty to the state jail felony offense of possessing less than a gram of methamphetamine and was placed on deferred adjudication community supervision for a period of three years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West Supp. 2024). Appellant continued using methamphetamine despite her conditions of community supervision, and her continued drug use resulted in the adjudication of her guilt and the revocation of her community supervision for this offense. In this regard, Appellant was arrested on November 28, 2023 for violating certain conditions of her community supervision, which included allegations that she tested positive for methamphetamines and

amphetamines. She remained in the Taylor County Jail until a trial court adjudicated her guilt, revoked her community supervision, and sentenced her to confinement in a state jail facility for a term of eight months on January 11, 2024.

The final termination hearing began on July 10, 2024, approximately ten days before Appellant's release. Kaleigh Young, the permanency case manager, testified that after removal, K.G. Jr. was placed with Appellant's ex-girlfriend, A.O., where the child has remained for the entire duration of the case. Appellant and her children lived with A.O. and A.O.'s two children from 2007 until Appellant left in 2017. Since then, A.O. has been the sole caretaker for the children and has not received financial support from Appellant.[2] Young confirmed that K.G. Jr. is "doing great" in A.O.'s home and is "always happy . . . [h]e's running around, playing with [A.O.], play[ing] with toys." K.G. Jr. is receiving weekly speech therapy, and is making progress. K.G. Jr. has bonded with A.O. and is "really attached" to his half-siblings. Young and A.O. testified that it is in the child's best interest to remain in A.O.'s home. A.O. expressed her willingness and desire to adopt K.G. Jr. if the parents' rights were terminated.

Appellant testified that she "knew [her children] were safe" with A.O., so she "respected [A.O.]'s authority over the children" by limiting her contact with them. She agreed that it was in the best interest of her children for A.O. to have permanent managing conservatorship, but she opposed termination of her parental rights. In this regard, Appellant testified that permanent managing conservatorship without termination would be in K.G. Jr.'s best interest because K.G. Jr. "is safe right now . . . and he's doing good . . . doing good with his brothers and with his sister," and that she "think[s] its for [K.G. Jr.'s] best interest that he stays there for now." With respect to support for K.G. Jr., Appellant asserted: "I can get myself on

---

[2]A.O. testified that Appellant's other three children also live in the home.

my feet, I can get my own place and . . . can support him." Appellant agreed that she never provided any support for her children while they were living with A.O. Appellant claimed that she is willing to provide financial support, and first asserted that she did not in the past because A.O. never asked for support. Appellant then admitted: "I didn't have the money and, like, I was -- you know, I was on drugs."

Appellant attested that she was confident in her ability "to stay clean," and did not "see [herself] going back to [drug use] at all." She told the trial court that she began using methamphetamine in 2017 but has been sober for eight months. Prior to her incarceration, her longest period of sobriety was three weeks when she was in a substance abuse treatment facility in 2021. However, Appellant left the facility "[b]ecause [she] didn't want to be there," and immediately resumed using methamphetamine daily. Appellant's plan to remain sober was to attend therapy, Narcotics Anonymous (NA) meetings, and "take it day-by-day." She also pledged to seek support from A.O. and her children, and "[s]tay away from people that are not good."

Appellant's plans upon release did not include seeking custody of K.G. Jr. "right away; just until . . . [she] know[s] for sure that [she's] okay; like when [she] get[s] a job, when [she] get[s] a place, and [she] know[s] [that she] can support him," she'll "try to get him back." She expressed the intent to seek custody of K.G. Jr. when she is in a good place, meaning, "[b]eing stable, like having a stable job, being there for awhile; having [her] own place; you know, being able to support [K.G. Jr.] and [Appellant's] other kids." Appellant has not had a home or employment since 2017, but averred that this time would be different because she's "not going to be on drugs."

While incarcerated, Appellant completed her parenting course and attended NA and Alcoholics Anonymous (AA) meetings. In the few months before her arrest and confinement, Appellant did not participate in services and missed two of her

8

scheduled parent-child visits. Young opined that Appellant has not demonstrated that she can stay sober or refrain from criminal activity.

The final hearing resumed on August 12, 2024. A.O. testified that Appellant stayed with A.O. following her release but left after three days. A.O. reported that Appellant is "not changing," and is "back out on the streets . . . doing the same thing." According to Young and A.O., Appellant has not found a job or housing. Young has only been able to reach Appellant once since she was released; Appellant stopped responding after Young asked her if she needed help finding a place to stay. Appellant has not submitted to drug testing because Young has not "been able to get a hold of her."

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the child. This appeal followed.

*Best Interest of the Child*

In Appellant's sole issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of K.G. Jr. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of K.G. Jr. *See Holley*, 544 S.W.2d at 371–72.

Appellant's argument relies on the purported lack of evidence of each *Holley* factor, but evidence of each factor is not required to support a best-interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). We note at the outset that the absence of evidence regarding some of these factors does not preclude a best-interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)).

Evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28). In this regard, Appellant does not challenge the trial court's findings that she endangered K.G. Jr. as set forth in Section 161.001(b)(1)(D) and (E), nor does she contest that she failed to comply with the provisions of her court-ordered service plan pursuant to Section 161.001(b)(1)(O). Consequently, those findings are binding on this court as valid grounds for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552; *In re J.G.*, 592 S.W.3d 506, 506 n.2 (Tex. App.—Waco 2019, no pet.). And the trial court could properly consider the evidence that supported its endangerment findings and Appellant's failure to comply with her court-ordered service plan in assessing whether the termination of her parental rights was in the best interest of the child. *See E.C.R.*, 402 S.W.3d at 249–50; *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The clear and convincing evidence that Appellant knowingly endangered K.G. Jr. also established that terminating Appellant's parental rights was in K.G. Jr.'s best interest. At the core of Appellant's endangering conduct was her persistent methamphetamine use, which she prioritized over providing for and caring for K.G. Jr. A parent's drug use poses infinite potential dangers to the child. *See, e.g., In re C.S.*, No. 11-24-00186-CV, 2024 WL 5080505, at *10 (Tex. App.—Eastland Dec. 12, 2024, no pet.) (mem. op.) (considering mother's unrepentant marihuana use in best-interest analysis because "any drug activity may render the parent incapable of parenting") (quoting *J.S.*, 687 S.W.3d at 554). But this case stands as stark testament to those dangers. Appellant left two-month-old K.G. Jr. in the care of the father, an abusive methamphetamine user who lived in his car. As a result, K.G. Jr. experienced homelessness for the first two years of his life and exposure to methamphetamine.

Prior to abandoning K.G. Jr., Appellant failed to properly ensure that he would be adequately cared for and supported, making no arrangements for the child aside from leaving him with a father known to her to frequently use methamphetamine. A parent's decision to leave a child in the care of a known drug user subjects the child to a life of uncertainty and instability that endangers the child's physical and emotional well-being. *See In re E.G.*, 643 S.W.3d 236, 253–54 (Tex. App.—Amarillo 2022, no pet.) (considering evidence of endangerment as probative in best-interest analysis) (citing *In re J.J.*, No. 07-13-00117-CV, 2013 WL 4711542, at *4 (Tex. App.—Amarillo Aug. 29, 2013, no pet.) (mem. op.)). But Appellant excuses the dereliction of her parental duties as being altruistic. She told the trial court: "I always do what's best for my kids, even, you know, leaving them behind." That Appellant expected the father, with his consistent history of drug use, to abruptly embrace sobriety and become self-sufficient "since he had his son with him," was poor judgment and probative evidence that termination of her parental rights was in

11

the child's best interest. Yet, as to Appellant herself, rather than renouncing her own destructive habits and abating her surrender to methamphetamine addiction, she abandoned newborn K.G. Jr.—evidently without regard for his health, safety, or general well-being. Accordingly, the trial court could rationally infer that Appellant was, at minimum, indifferent to K.G. Jr.'s physical health and emotional well-being, given her knowledge of the father's inability to properly care for a two-month-old child. This evidence supports the trial court's finding that terminating Appellant's parental rights was in the child's best interest. *See In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (continuing pattern of illegal drug use "implicates most of the *Holley* factors"); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child."); *see also In re T.L.C.*, No. 01-17-00498-CV, 2018 WL 4139004, at *15–18 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pet. denied) (mem. op.) (considering the mother's decision to leave her four-year-old and eleven-month-old children home alone at night).

Further, it is undisputed that Appellant's years of drug use led to her incarceration for a felony drug conviction, a lack of housing and employment, and prolonged absence from her children. *See In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (parent's years of drug use supported the trial court's best interest finding); *see also In re R.R.A.*, 687 S.W.3d 269, 281 (Tex. 2024) ("When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and a prolonged absence from the children," a parent's drug use supports a finding of endangerment.); *J.S.*, 687 S.W.3d at 552 (evidence that is relevant to a termination ground may also be relevant to the child's best interest). Since 2017, Appellant has not had stable housing, employment, or sobriety until sobriety was compelled by her arrest, conviction and incarceration for

a felony drug offense. She has never provided K.G. Jr. with *any* home, much less a safe, stable home. Appellant not only ignored her parental responsibilities to K.G. Jr., but also left her three *other* children in A.O.'s care while Appellant engaged in daily methamphetamine use. *See C.H.*, 89 S.W.3d at 27–28 (past performance as a parent "could certainly have a bearing on [a parent's] fitness to provide for" her child); *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("The factfinder may consider prior CPS history of neglect, drug abuse, or lack of care for the children."). Appellant's lack of housing and employment, her criminal record, and absence from her children's lives exemplifies the risks that a pattern of drug use can create and supports the trial court's best-interest finding. *See R.R.A.*, 687 S.W.3d at 279; *see also J.A.R.*, 696 S.W.3d at 257–58 (the parents' criminal history and history with the Department that coincides with their drug use supports the trial court's best-interest finding); *In re S.H.*, No. 01-22-00255-CV, 2022 WL 17254956, at *18 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. denied) (mem. op.) ("Criminal activity that exposes the parent to the potential for incarceration is relevant to the trial court's best-interest determination.").

Although Appellant testified that she wanted to retain her parental rights and to have a relationship with K.G. Jr., she failed to articulate any concrete plan to personally provide for the child. *See J.D.*, 436 S.W.3d at 119–20 ("The fact finder may compare the contrasting plans for a child by the parent and the Department to consider whether the plans and expectations of each party are realistic or weak and ill-defined."). She testified that she did not want to be responsible for K.G. Jr. "right away" because she hoped to get a job and a home for the first time, at least since 2017. But Appellant's remote desire to eventually support K.G. Jr. holds little weight in the present, and the child should not have to rely on Appellant's wistful longing to someday become an adequate caretaker. *See* FAM. § 263.307(a) (prompt

and permanent placement of child in safe environment presumed to be in child's best interest).  By the second day of trial, which occurred approximately a month after the first day of trial and followed her release from incarceration, Appellant did not have a job or housing and failed to show any attempts to provide K.G. Jr. with a safe home.  Appellant's failure to demonstrate the ability to secure stable housing upon release, and her impermanent and uncertain living situation is evidence that can be weighed in determining the best interests of K.G. Jr.  *J.D.*, 436 S.W.3d at 119 ("A parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest.").

Additionally, that Appellant's failure to complete the tasks and services required by her service plan not only supported the uncontested predicate finding in subsection (O); it supported the trial court's best-interest finding.  *See E.C.R.*, 402 S.W.3d at 249 (a parent's failure to complete court-ordered services can support best-interest finding).  "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."  *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.— Houston [1st Dist.] 2017, pet. denied).  Appellant completed a parenting class and attended AA and NA meetings during her incarceration and purported to be sober.  But "recent improvement alone is not sufficient to avoid termination of parental rights."  *See N.T.*, 474 S.W.3d at 479 (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474, at *16 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.)).  And Appellant's failure to submit to drug testing or respond to the permanency case manager in the weeks following her release suggest that she reverted to methamphetamine use.  *See J.S.*, 687 S.W.3d at 551 ("[A] parent's decision to engage in illegal drug use during the pendency of a termination suit,

14

when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being.") (quoting *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)). Thus, her minimal effort during her eight months of imprisonment does not outweigh Appellant's years of drug use and intentional absence from K.G. Jr.'s life in the preceding years. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best-interest finding). What is profoundly telling is that, while on the first day of the final hearing Appellant professed a resolve to "stay clean" and create a proper home for K.G. Jr., by the final hearing Appellant was "back out on the streets . . . doing the same thing."

Given the child-centered focus of the best-interest inquiry, we may not discount K.G. Jr.'s safe and stable placement with A.O., and his established bond with her and his siblings. *See J.W.*, 645 S.W.3d at 746–47. "When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with [their] parent." *In re Y.G.*, No. 01-22-00181-CV, 2022 WL 3362953, at *16 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, pet. denied) (mem. op.) (quoting *J.D.*, 436 S.W.3d at 118); *see also In re N.J.H.*, 575 S.W.3d 822, 834 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (stating that evidence showing that a young child had bonded with foster family supported best-interest finding). Appellant admitted that it is in K.G. Jr.'s best interest to remain in A.O.'s home, and conceded: "[I]f they terminated my rights, I would be okay with it because . . . I know he's safe." In light of the clear and convincing evidence before it, the trial court terminated Appellant's rights, implicitly reasoning that to be the safest and most reliable course for K.G. Jr. The evidence permitted the reasonable inference that K.G. Jr.'s future would involve the same endangerment and abandonment

concerns were he returned to Appellant. *See In re A.V.*, No. 11-23-00144-CV, 2023 WL 8631492, at *8 (Tex. App.—Eastland Dec. 14, 2023, no pet.) (mem. op.).

Due to Appellant's disregard of her parental responsibilities, K.G. Jr. has already endured more hardship than any child should encounter. Appellant chose drug use over responsible parenthood, which led to her neglect of K.G. Jr.'s physical and emotional needs. Appellant left K.G. Jr. without a home and exposed him to ongoing parental substance abuse and Appellant's prolonged absence.

With the parent-child relationship broken as a result of Appellant's actions and abandonment of K.G. Jr., the trial court rationally determined that said relationship was not a proper one. *See In re J.N.*, No. 11-23-00258-CV, 2024 WL 1559270, at *5 (Tex. App.—Eastland Apr. 11, 2024, pet. denied) (citing *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.)). We conclude that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the child. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's sole issue.

## *This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS
JUSTICE

February 13, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

16